# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### TERRE HAUTE DIVISION

| | | |
|---|---|---|
| GLENDAL RHOTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| vs. | ) | No. 2:15-cv-0102-WTL-DKL |
| | ) | |
| RICHARD BROWN, Superintendent, | ) | |
| | ) | |
| Respondent. | ) | |

## Entry Discussing Petition for Writ of Habeas
## Corpus and Denying Certificate of Appealability

Glendal Rhoton seeks habeas corpus relief. Having considered pleadings and the expanded record, the Court finds that the habeas petition must be denied and this action dismissed with prejudice. In addition, the court finds that a certificate of appealability should not issue.

### I.  Nature of the Case

Glendal Rhoton seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254(a).

### II. Parties

Rhoton is confined at the Wabash Valley Correctional Facility, an Indiana prison. The respondent is Rhoton's custodian, sued in his official capacity as a representative of the State of Indiana.

## III. Procedural Background

Rhoton was convicted in 2010 for murder and burglary. He admitted being a habitual offender. An aggregate sentence of 81 years was imposed. His convictions were affirmed in *Rhoton v. State*, 938 N.E.2d 1240 (Ind.Ct.App. 2010)(*Rhoton I*), and the denial of his petition for post-conviction relief was affirmed in *Rhoton v. State*, No. 49A05-1311-PC-563 (Ind.Ct.App. Oct. 8, 2014)(*Rhoton II*).

The filing of this action followed. The record has been appropriately expanded and the matter is fully at issue.

## IV. Statement of Facts

District court review of a habeas petition presumes all factual findings of the state court to be correct, absent clear and convincing evidence to the contrary. See 28 U.S.C. § 2254(e)(1); *Daniels v. Knight,* 476 F.3d 426, 434 (7th Cir. 2007). No showing of such a nature has been attempted here. The court therefore adopts the factual account of the Indiana Court of Appeals in *Rhoton I*:

> Late in the evening of September 2, 2008, Kimberly Philpot drove Rhoton, her ex-husband, to the Road Dog Saloon in Indianapolis. Rhoton told her to leave, so she drove to a nearby strip mall to wait. The saloon was closed, but Rhoton walked to the back of the building with a pickax and flathead screwdriver. When Philpot returned about ten minutes later, Rhoton threw the pickax in the back of the truck and screwdriver in the cab and said, "'I smashed the dicksucker's brains in.'" Transcript at 382.
>
> At Rhoton's request, Philpot left again and then returned fifteen minutes later. She saw Rhoton in a shed behind the saloon, left again, and returned a few minutes later to find Rhoton waiting for her by the street. He instructed her to pull around back. There Rhoton and Philpot loaded two barrels full of frozen meat and other food into the back of the truck. As they left the saloon, Rhoton told Philpot that he needed to get rid of the pickax. Philpot drove back to the strip mall, where Rhoton placed the pickax next to a green recycling bin.

Shortly before eleven o'clock on the evening of September 2, 2008, Officer Frank Vanek of the Indianapolis Metropolitan Police Department ("IMPD") was dispatched to investigate an alarm at the Road Dog Saloon on the southeast side of Indianapolis. When Officer Vanek arrived, he found that the doors to the saloon were secure. However, in the rear of the building, he found Martin Wilburn wrapped in a blanket and lying face down on a row of chairs that had been pushed together. Wilburn had suffered several severe injuries to his head and was bleeding profusely. The officers called for medics, who arrived within ten minutes and transported Wilburn to the hospital. Officers on the scene discovered that the shed in the back of the saloon was not secure and that frozen food was missing from the shed's freezer.

Wilburn died a short time later as a result of his injuries. He had suffered three large lacerations around and below his left ear. Each laceration was approximately one and one-half inches long, and the one below the left earlobe penetrated "approximately one inch into the tissues of the lower portion of the skull." Transcript at 335. In one of the skull fractures Wilburn had sustained, "a piece of bone was literally pushed in causing a punched out effect[,]" and his brain was lacerated. *Id.*

At the same time that evening, IMPD Officer Craig Wildauer was assisting another officer with an arrest for possession of marijuana on the east side of Indianapolis. When the arrestee's cell phone rang, Officer Wildauer answered and pretended to be the arrestee. In a very brief conversation, the caller, a male, asked to meet. Subsequently a female called the arrestee's cell phone, and then a male got on the phone. Officer Wildauer agreed to meet the caller at the intersection of East Washington Street and Sherman. Shortly after Officer Wildauer drove to that intersection, he saw a pickup truck pull in to a parking lot on the southwest corner without using a turn signal, and the truck's driver was not wearing a seatbelt. Officer Wildauer initiated a traffic stop of the truck.

In the traffic stop, the officer learned that Kimberly Philpot was the driver, and Rhoton was her passenger. Philpot and Rhoton appeared nervous. Officer Wildauer noticed that the bed of the truck contained large barrels filled with frozen meat and frozen breaded mushrooms. Officer Brady Ball arrived as backup. Officer Wildauer had Rhoton wait on the truck's open tailgate while he took Philpot to the front of the truck. Once at the front of the truck, Philpot told the officer that she thought someone at the Road Dog Saloon needed help. When the officers inquired through IMPD about a problem at the Road Dog Saloon, they learned of the break-in and Wilburn's injuries. Philpot then told Officer Ball that Rhoton had left a pickax by the recycling bin behind a strip mall. Later testing disclosed the presence of Wilburn's blood and DNA on the pickax.

*Rhoton I*, 938 N.E.2d at 1242.

The Indiana Court of Appeals held that the evidence was sufficient, because it "show[ed] that Rhoton was present at the saloon around the time of the murder, had in his possession a pickax, and boasted to Philpot that he had 'smashed [someone's] brains in . . . [and l]ater testing of a red stain on the pickax revealed Wilburn's DNA . . ." *Id.* at 1247.

### V. Rhoton's Claims

In *Rhoton I,* Rhoton presented challenges to the jury instructions, to the sufficiency of the evidence and to his sentence. Rhoton sought transfer challenging the sufficiency of the evidence. In *Rhoton II,* the following claims were presented: 1) the post-conviction court denied Rhoton due process by failing to hold a fair post-conviction hearing; 2) Rhoton was denied the effective assistance of counsel at trial; and 3) Rhoton was denied the effective assistance of counsel in *Rhoton I.*

Rhoton seeks habeas corpus relief based on the same claims as presented in *Rhoton II.*

### VI. Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a) (1996). Rhoton filed his habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA). His petition, therefore, is subject to the AEDPA. *See Lindh v. Murphy,* 521 U.S. 320, 336 (1997). When a habeas petitioner's claim was adjudicated on the merits in State court proceedings, § 2254(d) provides that a federal court may grant a writ of habeas corpus only if that adjudication was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2)

"resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The decision made by a state court is deemed to be contrary to clearly established federal law "'if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts.'" *Emerson v. Shaw,* 575 F.3d 680, 684 (7th Cir. 2009)(quoting *Bell v. Cone,* 535 U.S. 685, 694 (2002)). The decision by a state court is deemed to involve an unreasonable application of clearly established federal law "'if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case.'" *Id.* (quoting *Bell,* 535 U.S. at 694). "Under § 2254(d)(2), a decision involves an unreasonable determination of the facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence." *Goudy v. Basinger,* 604 F.3d 394, 399–400 (7th Cir. 2010) (citing *Ward v. Sternes,* 334 F.3d 696 (7th Cir. 2003)).

A federal habeas court conducting an analysis under § 2254(d) "must determine what arguments or theories supported, or, [in the case of an unexplained denial on the merits], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." *Harrington v. Richter,* 131 S. Ct. 770, 786 (2011).

## VII. Discussion

### A. Post-conviction Relief

Rhoton's first habeas claim is that he was denied a fair hearing at the post-conviction relief stage. This argument was persuasively rejected in *Rhoton II,* at pp. 5-7. More fundamentally, this does not present a cognizable claim for relief. "To say that a petitioner's claim is not cognizable

on habeas review is thus another way of saying that his claim 'presents no federal issue at all.'" *Perruquet v. Briley,* 390 F.3d 505, 511 (7th Cir. 2004)(quoting *Bates v. McCaughtry,* 934 F.2d 99, 101 (7th Cir. 1991)).

The foregoing conclusion rests on the established law that errors at post-conviction do not present a viable basis for relief under § 2254(a). *Montgomery v. Meloy,* 90 F.3d 1200, 1206 (7th Cir.) ("[u]nless state collateral review violates some independent constitutional right, such as the Equal Protection Clause, . . . errors in state collateral review cannot form the basis for federal habeas corpus relief"), *cert. denied,* 519 U.S. 907 (1996); *Williams v. State,* 640 F.2d 140, 143-44 (8th Cir.) ("Infirmities in the state's post-conviction remedy procedure cannot serve as a basis for setting aside a valid original conviction. . . . Errors or defects in the state post-conviction proceeding do not, *ipso facto,* render a prisoner's detention unlawful or raise constitutional questions cognizable in habeas corpus proceedings."), *cert. denied,* 451 U.S. 990 (1981).

The claim of error in the post-conviction proceeding does not warrant the habeas relief Rhoton seeks.

## B. Assistance of Counsel at Trial

Rhoton presents myriad specifications of attorney ineffectiveness at his trial. *Strickland v. Washington,* 466 U.S. 668, 684 (1984), provides the clearly established Federal law, as determined by the Supreme Court of the United States that governs a claim of ineffective assistance of counsel.

> *Strickland* recognized that the Sixth Amendment's guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence" entails that defendants are entitled to be represented by an attorney who meets at least a minimal standard of competence. *Id.,* at 685–687. "Under *Strickland,* we first determine whether counsel's representation 'fell below an objective standard of reasonableness.' Then we ask whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Padilla v. Kentucky,* 559 U.S. 356, 366 (2010) (quoting *Strickland, supra,* at 688, 694).

*Hinton v. Alabama,* 134 S. Ct. 1081, 1087-88 (2014)(parallel citations omitted). The Supreme Court framed the determinative question as "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686. This Court must give "double deference" to the state court's ruling on ineffective assistance of counsel claims because habeas review under AEDPA requires a habeas court to give the state court and the defense attorney the benefit of the doubt. *Woods v. Donald,* 135 S. Ct. 1372, 1376 (2015).

The Indiana Court of Appeals recognized the above *Strickland* standard. *Rhoton II,* at p. 8. Each of Rhoton's myriad specifications of ineffective assistance of counsel at trial was reviewed, and as to each the Indiana Court of Appeals reasonably applied the *Strickland* standard. "Under AEDPA, if the state-court decision was reasonable, it cannot be disturbed." *Hardy v. Cross,* 132 S. Ct. 490, 495 (2011). In examining a habeas petition such as Rhoton presents here, the court is required to deny the writ so long as the [state courts] *"t[ook] the [constitutional standard] seriously and produce[d] an answer within the range of defensible positions." Murrell v. Frank,* 332 F.3d 1102, 1111–12 (7th Cir. 2003) (quoting *Mendiola v. Schomig,* 224 F.3d 589, 591 (7th Cir. 2000) (emphasis added in *Murrell*). Because the Indiana Court of Appeals did so, Rhoton's claim of ineffective assistance of counsel at trial does not support the relief he seeks.

### C. Assistance of Counsel in *Rhoton I*

Claims of ineffective assistance of appellate counsel are measured against the same standard as those dealing with ineffective assistance of trial counsel established in *Strickland. Howard v. Gramley,* 225 F.3d 784, 789–90 (7th Cir. 2000). A petitioner who contends that appellate counsel rendered ineffective assistance of counsel must show that the failure to raise an issue on direct appeal was objectively unreasonable and that the decision prejudiced petitioner in

the sense that there is a reasonable probability that his case would have been remanded for a new trial or that the decision of the state trial court would have been otherwise modified on appeal. *Id.* at 790.

Rhoton does not claim ineffective assistance of counsel in *Rhoton I* because of a claim which was omitted, but claims ineffective assistance of counsel based on his attorneys combining an argument of incredible dubiosity with the argument of insufficient evidence. The former was a challenge to the testimony of Kimberly Philpot and the latter was likewise centered on the credibility of that same testimony. The Indiana Court of Appeals explained that "if appellate counsel were to separate the incredible dubiosity and sufficiency arguments, as Rhoton suggests, we do not believe that would have changed this court's decision in Rhoton's direct appeal." *Rhoton II,* at p. 15. The claim of ineffective assistance of counsel in *Rhoton I* was therefore rejected. This was a correct, and hence reasonable, application of *Strickland.*

### VIII. Conclusion

This court has carefully reviewed the state record in light of Rhoton's claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus proceeding permits. "A defendant whose position depends on anything other than a straightforward application of established rules cannot obtain a writ of habeas corpus." *Liegakos v. Cooke,* 106 F.3d 1381, 1388 (7th Cir.1997). No such established rules entitle Rhoton to relief in this case. Rhoton's petition for a writ of habeas corpus is therefore **denied.**

Judgment consistent with this Entry shall now issue.

### IX. Certificate of Appealability

Pursuant to Rule 11(a) of the *Rules Governing Section 2254 Cases*, the Court finds that Rhoton has failed to show that reasonable jurists would find "it debatable whether the petition

states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484

(2000). The Court therefore **declines** to issue a certificate of appealability.

IT IS SO ORDERED.


Date:  7/19/16

_William T Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

GLENDAL RHOTON
110746
Wabash Valley Correctional Facility
Electronic Filing Participant – Court Only

Electronically Registered Counsel